**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**JANE E. BETHEL,**

        **Plaintiff,**

**v.**                               **Civil Action No. 2:15cv501**

**CITY OF NORFOLK,**

        **Defendants.**

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, City of Norfolk ("City"), by counsel, in support of its Motion for Summary Judgment filed contemporaneously herewith, submits its arguments and authorities as follows:

### I.      PROCEDURAL POSTURE

Plaintiff filed a multi-count Amended Complaint which was addressed by the Court on Defendant's Motion to Dismiss.  As a result of the Court's rulings of June 22, 2016, the only claim of Plaintiff not disposed of is her Title VII retaliation claim. <u>See</u> Order of June 22, 2016, at p. 22-23.  Plaintiff alleges that her employment was terminated in retaliation for protected activity under both the "Participation Clause" and the "Opposition Clause" of Title VII.

### II.      UNDISPUTED MATERIAL FACTS

The following Exhibits are attached:  Plaintiff's EEOC Charge; pertinent portions of Plaintiff's Deposition Testimony; Affidavit of David Sullivan (Chief Information Officer at the time of termination); Affidavit of Capri Stanley-Smith (Director of Human Resources); Affidavit of Marcus Jones (City Manager at the time of termination).

1.	Bethel worked for the City in the Communications and Technology Department (formerly, Information Technology) as an Information Technology Planner.  A.C. Para. 1, 7-8; Sullivan Aff.

2.	Bethel was an Employee Relations Committee (ERC) representative for her Department.  A.C. Para. 12; Ex. 5; Stanley-Smith Aff.

3.	Bethel was also the "elected President of the National Association of Government Employees (NAGE) Local 200."  A.C. Para. 14-15; Stanley-Smith Aff.

4.	Bethel also served as an "employee representative" for grievants during the City's internal grievance process.  A.C. Para. 22; Ex. 8; Stanley-Smith Aff.

5.	Bethel's duties and responsibilities as an Informational Technology Planner in the Department of Information Technology for the City did not include Human Resources matters.  Sullivan Aff.; Stanley-Smith Aff.

6.	In 2011, management changes took place in the City Manager's Office, the Human Resources Department, and the Information Technology Department.  A new City Manager, Marcus Jones, began in his position in February 2011.   A new Director of Human Resources, Capri Stanley-Smith, began in her position in December 2011 as Acting Director and then Director in January 2012.  Finally, David Sullivan became Bethel's new Department Head in December 2011 as the Director of Information Technology and later, in July 2013, as the Chief Information Officer, Department of Communications and Technology.  Jones Aff.; Stanley-Smith Aff.; Sullivan Aff.

7.	With new managers in Stanley-Smith and Sullivan, concerns were raised regarding Bethel's involvement in personnel matters throughout the City, which had nothing to do with her position as an Information Technology Planner and which was, among other things,

hindering and interfering with the Department of Human Resources' role in managing the City's workforce.  Stanley-Smith Aff.; Sullivan Aff.

8.      Bethel's allegations of her "employee advocacy" efforts appear to begin in 2010, over three years prior to the termination of her employment.  She allegedly "assisted" other City employees with what she characterizes as "discrimination" issues, and her employment was not terminated.  A.C. Paras. 20, 33, 42.  However, many of her "employee advocacy" efforts had nothing to do with allegations of discrimination or harassment based on protected class status.

9.      On April 26, 2012, Bethel had received a written reprimand regarding insubordination and conduct unbecoming of an employee of the City.  Sullivan Aff.; Stanley-Smith Aff.

10.      Bethel's misconduct continued following the reprimand.  Sullivan Aff.; Stanley-Smith Aff.

11.      In June 2013, the City learned that Plaintiff had secretly recorded a senior manager, after telling him the conversation would be "off-the-record."   Stanley-Smith Aff.  This recording was produced by as an exhibit to be used in a hearing in a grievance accessibility case in Norfolk Circuit Court. Id.  That is, the former employee was denied access to the City's grievance process, as she had resigned.  There were no allegations of Title VII discrimination, harassment, or retaliation in the grievance that the former employee attempted.  Id.  She filed a petition in the Norfolk Circuit Court to appeal the denial of access.  Id.  The City's Grievance Procedures provide for an appeal to the Norfolk Circuit Court when a grievance is determined to be non-grievable or an individual is determined to not have access to the City's grievance process.  Id., Ex. K.

12.     It was the context of the grievance accessibility case, through the production of the recording in June 2013 and Plaintiff's testimony at the June 17, 2013 hearing, the City learned about the secret recording.  Stanley-Smith Aff.

13.     In July 2013, Bethel contacted the Director of Utilities in an effort to get a meeting with her to discuss an employee.  At the time, the employee had been suspended pending a request for termination.  Id.  No investigative hearing had yet been conducted; no discipline or corrective action had been imposed; no termination had occurred. Id.  Bethel was contacting the Director in an effort to negotiate discipline prior to its imposition. She indicated that she was representing the employee in his grievance.  No grievance had been filed and the suspension pending termination was not grievable. Id.

14.     Bethel was attempting to schedule a meeting in July 2013 with the Director of Utilities for an employee whom she was "representing" in a "whistleblowing" situation to discuss his allegations of "fraud"  A.C. Para. 73-74; Pl. Dep. p. 109, l.8-p. 110, l.1.

15.     Ms. Bethel had previously been advised that an employee could not grieve a suspension pending termination, as no discipline had yet been determined or imposed.  Stanley-Smith Aff.

16.     Ms. Bethel had previously been advised that her role as an ERC representative did not include "representing" individual employees with respect to specific personnel matters.  Id.

17.     Ms. Bethel had previously been advised that her role as an employee representative in the grievance process was limited to representing an employee at the specific steps outlined in the Grievance Procedure.  Id.

18.     Ms. Bethel had previously been advised that she was not to contact Department Heads in an effort to "negotiate" matters prior to the imposition of any discipline.  Id.

19.     Pursuant to the City's Disciplinary Rules, Bethel was suspended pending termination by her Department Head, an investigative hearing was held, the Director of Human Resources recommended approval of the request for termination, and the City Manager approved the termination.

20.     Bethel was suspended pending a request for termination on July 12, 2013. Sullivan Aff.; Stanley-Smith Aff.   As detailed in the suspension conference form, attached as Exhibit B to Sullivan's Affidavit, she was charged with insubordination, violation of the Business Conduct Policy, dishonesty, and conduct unbecoming of a City employee, in relation to a situation in which she secretly recorded a conversation with a management level employee, after telling him the conversation would be "off the record" and due to her continuing efforts to undermine the ability of Human Resources to effectively manage the City's workforce and continued involvement in other employees' specific, individual personnel matters.  Sullivan Aff.

21.     The decision to request termination, and the decision to suspend pending termination, were made by Sullivan the morning of Friday, July 12, 2013.  Sullivan Aff.  The suspension conference form was prepared by the Department of Human Resources, and reviewed by Sullivan and by counsel.  Sullivan agreed with the language in the suspension conference form and advised Bethel regarding the termination request the afternoon of Friday, July 12, 2013.  The reasons that Sullivan made the request for termination are reflected in the suspension conference form.  Id.

22.     An investigative hearing was held on July 30, 2013.  Subsequently, an investigative hearing report was prepared.

23.     Stanley-Smith recommended approval of the Chief Information Officer's request for termination based on the information contained in the Investigative Hearing Report.  Stanley-

Smith Aff., Ex. M.   The report and supporting materials were forwarded to the City Manager.

24.     The supporting materials referenced in the Investigative Hearing Report were also considered by Stanley-Smith and sent to the City Manager for review.  This includes a transcript of the testimony from the court proceeding where Bethel had provided the secret recording, a transcript of the investigative hearing, and various emails reflecting Bethel's interference and reminders from Human Resources that she was not to be involved in the specific personnel matters of individual employees.   Stanley-Smith Aff., Ex. N.

25.     Bethel's employment was terminated effective August 27, 2013 for insubordination, violation of the Business Conduct Policy, dishonesty, and conduct unbecoming of a City employee.  The reasons for the termination of her employment are reflected in the Investigative Hearing Report.  Jones Aff.; Stanley-Smith Aff.

26.     To the extent that Bethel was "assisting" other employees with respect to complaints of discriminatory conduct or harassment based on protected class status, this was in no way a factor in making the termination request or approval of same.  Sullivan Aff.; Stanley-Smith Aff.; Jones Aff.

27.     Following the April 26, 2012 reprimand and prior to July 12, 2013, Stanley-Smith asked Sullivan to monitor Ms. Bethel's workload, job performance, and time spent during normal work hours on non-work-related activities.  This did not happen.  Stanley Smith Aff.; Sullivan Aff.

28.     After making the request to terminate Ms. Bethel's employment, Sullivan looked at her emails and other documents on the City's computer system.  Sullivan found that there were hundreds of emails on her City email account regarding the individual personnel matters of other City employees, and that she was using the City's document management system

(Laserfiche) to store documents regarding her outside "union" activities and her efforts to "investigate" personnel matters in other departments. The City's document management system, Laserfiche, is the official repository of records maintained by the City and the storage of non-City records is in direct violation of the City's Electronic Data Resources Acceptable Use Policy. Sullivan Aff.

29.     Sullivan provided additional information regarding her non-work-related activities, during her general work hours and/or using City equipment and the computer system, to the City Manager. Sullivan Aff. The City Manager had asked for additional information regarding these topics. Jones Aff. However, the City Manager ultimately did not rely on the additional information as a basis for the termination decision. Id.

30.     Bethel filed an internal grievance with respect to the termination of her employment. Bethel exhausted her City remedies through the grievance process and the decision of the grievance panel was to uphold the City's ruling to terminate. Stanley-Smith Aff. Bethel was represented by counsel in the grievance process and a three person panel, chaired by an attorney, upheld the City's termination decision, after a three-day hearing. Id.

31.     Bethel did not file an EEOC Charge during the time she was employed with the City. Pl. Dep. p. 31-l. 12- p. 32, l. 25.

32.     Bethel did not testify in any Title VII investigation, proceeding, or hearing during the time she was employed with the City. Pl. Dep. p. 43, l. 20-p. 48, l. 11.

33.     Bethel did not assist in any Title VII investigation, proceeding, or hearing during the time she was employed with the City. Id.

34.     Bethel did not participate in any Title VII investigation, proceeding, or hearing during the time she was employed with the City. Id.

35.     Bethel maintains that she "assisted" employees with their complaints of discrimination and/or harassment based on protected class status.

36.     The City was not necessarily aware of Bethel's "assistance" with respect to employees with respect to complaints of discrimination or harassment based on protected class status.  In particular, Sullivan, who requested the termination; Stanley-Smith, who recommended approval of the termination; and Jones, who approved the termination, were not always aware of the "assistance" provided by Bethel to any specific employee.  Pl. Dep. p. 146, l. 16-p. 160, l. 15.

37.     Bethel's conduct following the April 26, 2012 reprimand is the basis for the termination of her employment.  See Sullivan Aff., Suspension Conference Form, Ex. B; Stanley-Smith Aff., Investigative Hearing Report, Ex. M.

38.     Bethel's "assistance" to employees pre-dates the time period (December 2011) when Stanley-Smith and Sullivan became Department Heads.

39.     Bethel's "assistance" to employees pre-dates the reprimand she received in April 2012.

40.     Bethel's "assistance" to employees also post-dates the July 12, 2013 request for termination and the August 27, 2013 termination of her employment.

41.     Bethel listened to the secret recording in June 2013 for the first time in quite some time.  Bethel "cringed" when she listened to the secret recording in June 2013 and heard that she had said it would be "off-the-record."  Pl. Dep. p. 145, l. 24- p. 146, l. 15.

# III.    ARGUMENT AND AUTHORITIES

## A.    Standard of Review for Motion for Summary Judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The mere existence of some alleged factual dispute will not defeat a motion for summary judgment, and factual disputes that are irrelevant or unnecessary are to be ignored.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To defeat this motion, a genuine dispute as to a material fact, the materiality of which will be determined by substantive law, must exist; the trial judge must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52. Moreover, according to the Fourth Circuit, trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims' . . . from proceeding to trial."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

## B.    The scope and nature of Plaintiff's allegations is limited to the scope of the Charge of Discrimination.

In a Title VII case, the underlying Charge of Discrimination filed with the EEOC controls the scope of the case. Chacko v. Patuxent Inst., 429 F.3d 505 (4th Cir. 2005).   Plaintiff's current claim must be limited to the scope of Plaintiff's Charge of Discrimination filed with the EEOC on January 13, 2014 (Charge, Ex. 1 to Pl. Dep.).  In her Charge, Plaintiff asserted that (1) she had "assisted" numerous employees who were claiming discrimination and (2) that she had "testified" in a court proceeding in June 2013 on behalf of a former employee of the City.   Her claim must be limited as such.

**C.      Plaintiff cannot prove retaliation under Title VII.**

To establish a prima facie case of retaliatory discharge under Title VII, Plaintiff must

show: (1) that she engaged in protected activity; (2) that the Defendant took adverse employment

action against her; and (3) that a causal connection existed between the protected activity and the

adverse action.  Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010);

Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745 (4th Cir. 1996); Williams v. Cerberonics,

Inc., 871 F.2d 452, 457 (4th Cir. 1989).  Even accepting that the termination of her employment

was an "adverse employment action," the first and third elements remain unsatisfied.  Plaintiff

must show she engaged in protected activity under Title VII and that there was a causal

connection between the protected activity and the termination of her employment.

As noted by this Court when addressing the City's Motion to Dismiss, "[p]rotected

activity can be established under either the 'opposition clause' or the 'participation clause' of the

anti-retaliation provision of Title VII."  Order of June 22, 2016, p. 16.  As explained in Johnson

v. Portfolio Recovery Assoc., LLC, 682 F. Supp. 2d 560, 568-59 (E.D. Va. 2009):

> The anti-retaliation provision of Title VII contains two distinct
> clauses forbidding discrimination against a covered person.  The
> provision includes what is known as the "opposition clause", which
> makes it "an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has
> opposed any practice made an unlawful employment practice by this
> subchapter," and the "participation clause", which makes it an
> unlawful employment practice for the employer to discriminate
> because the employee "has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or
> hearing under this chapter."  . . .   Therefore, under the Title VII
> anti-retaliation provision, an employer is prohibited from
> discriminating against an employee for 1) opposing a practice that
> Title VII forbids, or 2) for making a charge, testifying, assisting, or
> participating in a Title VII investigation, proceeding, or hearing.

Further, "the employer's knowledge that the plaintiff engaged in protected activity is

absolutely necessary," as "an employer cannot take action because of a factor of which it is unaware." Dowe v. Total Action Against Poverty, 145 F.3d 653 (4th Cir. 1998). The "employer" for these purposes means "the 'decision-maker' behind the alleged retaliatory conduct." Dowe, 145 F.3d at 657. Finally, even if the employer was aware of protected activity, causation must still be shown, either through ordinary standards of proof or through the burden shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Foster v. University of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

Under the McDonnell Douglas three-prong framework, first, Plaintiff must establish a prima facie case of retaliation. If Plaintiff establishes a prima facie case, the burden then shifts to the City to articulate a non-retaliatory reason for its action, in order to rebut the presumption of retaliation. See, Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). If the City meets its burden, the presumption of discrimination is rebutted and "drops from the case," see, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), and Plaintiff then bears the ultimate burden to prove that she has been subject to retaliation, see St. Mary's Honor Ctr. v. Hicks, 509 U.S 502 (1993).

In 2013, the United States Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was the *but-for* cause of the challenged employment action." University of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) (emphasis added). Nassar rejected the "mixed motive" theory of liability where a plaintiff attempted to prove retaliation *without* the use of the McDonnell Douglas framework. Subsequently, in Foster, the Fourth Circuit held that McDonnell Douglas cases, like Nassar, have "long demanded proof at the pretext stage that retaliation was a *but-for* cause of a challenged adverse employment action."

Foster, 787 F.3d at 252 (emphasis added). Thus, no matter which proof scheme Plaintiff maintains she is pursuing, she still must show that her employment would not have been terminated *but for* the City's retaliation.

> **D.** **Plaintiff's complaints about and actions in personnel matters which did not involve Title VII matters and/or allegations of discriminatory conduct cannot be the basis for her Title VII retaliation claim.**

Many of the situations about which Bethel complained did not involve Title VII matters and/or alleged discriminatory conduct and cannot be considered to be protected activity. As the Court noted when addressing the City's Motion to Dismiss, Plaintiff's complaints of fraud, waste, abuse, bullying, and violations of the Family and Medical Leave Act do not involve activities prohibited by Title VII and cannot serve as the protected activity required for her Title VII retaliation claim. See Order of June 22, 2016, at p. 19. Accordingly, Plaintiff cannot rely on these alleged events, and/or her complaints about same, as the basis of her Title VII retaliation claim.

Indeed, consideration of the events which led to the termination of her employment confirms that these particular events did not involve Title VII issues. The hearing at which the City learned of Bethel's actions in secretly recording a manager in an "off the record" conversation was not a hearing on a Title VII claim; it was an appeal hearing related to access to the City's grievance process. Stanley-Smith Aff., see Exhibit N. The employee whom she was "assisting" by trying to meet with his Department Head was not complaining about discrimination, but about fraud. Stanley-Smith Aff., see Exhibit N; Pl. Dep. p. 109, l.8-p. 110, l.1. Thus, neither Plaintiff's appearance at the court hearing in June 2013 nor her "representation" of the employee in July 2013 would invoke the Title VII retaliation clause.

Internal complaints regarding issues not encompassed by Title VII would not fall under

the participation clause or the opposition clause for that matter.  Supinger v. Virginia, 167 F.

Supp. 3d 795 (W.D. Va. 2016) (Employee's complaints regarding public safety and violations of

state policy on gifts were not protected activity, as they did not involve either a Title VII charge

or informally opposing discrimination).  Here, Bethel's numerous complaints regarding the City

which did not involve Title VII issues would likewise not fall under either the participation

clause or the opposition clause.  As such complaints did not involve protected activity, Plaintiff

cannot establish a prima facie case of retaliation through any reliance on such complaints.

**E.      Plaintiff's actions did not involve any protected activity under the
          "Participation Clause."**

Plaintiff did not participate in any protected activity encompassed by the "Participation

Clause," and any such claim must be dismissed.

First, with respect to protected activity, Title VII's participation clause prohibits

employers from retaliating against employees who "made a charge, testified, assisted or

participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42

U.S.C. § 2000e-3(a).  Thus, "participation" is dealing with the legal process of an actual Title

VII charge or claim.  The participation clause only applies if the investigation, proceeding or

hearing is actually a Title VII investigation, proceeding, or hearing, and if the unlawful

employment practice at issue in the Title VII matter is one cognizable under Title VII.  See, e.g.,

Crowley v. Prince George's County, Md, 890 F.2d 683 (4th Cir. 1989).  The participation clause

applies only to those persons who actually participate in a Title VII proceeding.  Laughlin v.

Metropolitan Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998).

"Participation" in an internal investigation of discrimination or harassment complaints,

not in response to the employer's receipt of an actual charge of discrimination filed with the

EEOC, is not related to an EEOC investigation, proceeding, or hearing.  Johnson v. Portfolio

Recovery Assoc., LLC, 682 F. Supp. 2d 560 (E.D. Va. 2009). Accordingly, any such involvement in such internal investigations would not be protected activity under the participation clause. Id.

Bethel makes no allegations that she filed an EEOC Charge during her employment. Her EEOC Charge – alleging retaliatory termination – was filed after the termination of her employment. See Charge. Similarly, there are no allegations that she was a direct witness to or had any first-hand knowledge about any alleged discrimination, such that she participated as a witness in any investigation, proceeding, or hearing in a Title VII matter prior to the termination of her employment. In her deposition, Bethel admitted that she had not testified, assisted, or participated in any Title VII investigation, proceeding, or hearing. Pl. Dep. at p. 31, L 12 – p.32, L 25; p. 43, L 20 – p. 48, L 11.

In her EEOC Charge, which defines the scope of her pending case, she had stated that "[o]n June 17, 2013, I testified in a court proceeding on behalf of a former employee of the City." See Charge. In addressing Plaintiff's allegations on the City's Motion to Dismiss, the Court had construed Bethel's allegations regarding this situation as one where Bethel "assisted a Plans Examiner in presenting a grievance and in presenting her complaint of discrimination to the EEOC," that "the Plans Examiner later moved forward with a lawsuit against the City of Norfolk and Plaintiff served as a witness during a court hearing on June 17, 2013, less than a month before she was suspended pending her termination." See Order of June 22, 2016, at p. 17. However, the Plans Examiner's putative grievance did not involve allegations of discrimination or harassment; the lawsuit against the City was a grievance accessability appeal, and not a Title VII suit; and Plaintiff's testimony as a witness was at the grievance accessabilty appeal hearing, which had nothing to do with any Title VII allegations, and where the putative grievance

involved no allegations of discrimination or harassment.  Stanley-Smith Aff.

Thus, the participation clause would not apply with respect to Plaintiff's June 2013 testimony.  As such action did not involve protected activity, Plaintiff cannot establish a prima facie case of retaliation under the Participation Clause.

**F.      Plaintiff's actions did not involve any viable protected activity under the "Opposition Clause."**

Title VII's opposition clause protects an employee's opposition to "any practice made an unlawful employment practice." 42 U.S.C. Section 2000e-3(a).  To be considered as opposition activity, an employee need not engage in the formal process of adjudicating a discrimination claim.  Laughlin, 149 F.3d 253 (4th Cir. 1998); Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981).

The Fourth Circuit "has articulated an expansive view of what constitutes opposition conduct" and requires an analysis of whether a plaintiff's "course of conduct as a whole (1) communicates to her employer a belief that the employer has engaged in … a form of employment discrimination,' … and (2) concerns subject matter that is 'actually unlawful under Title VII' or that the employee 'reasonably believes to be unlawful.'"  DeMasters v. Carilion Clinic, 796 F.3d 409, 418 (4th Cir. 2015).  However, while the Fourth Circuit spoke in terms of "viewing the individual scenes in their broader context and judging the picture as a whole," the DeMasters Court also noted that "individual acts may be scrutinized to ascertain their nature, purpose, and nexus to the alleged objective."  Id.

Plaintiff throws out a number of situations where she contends she "opposed" discriminatory conduct by "assisting" employees.  However, whether the subject matter was "actually unlawful" or whether Bethel "reasonably believed" it to be unlawful is suspect.  According to Bethel, she typically "assisted" employees after they had already brought their

complaints to the attention of Human Resources and were dissatisfied with the results.  An analysis of the situations where she "assisted" employees reflects that she was typically "assisting" employees who had incurred or faced performance management or discipline, and raised allegations of "discrimination or harassment" in the context of complaining about the City's actions, or where employees had otherwise complained about their supervisors or co-workers and were dissatisfied with the City's response.

First, even considering her "assistance" as potentially involving "opposition" activities, Bethel's conclusory allegations cannot suffice to state a claim of retaliation under the opposition clause.  Bethel clearly disagreed with the City on any number of matters involving the specific, individual personnel matters of other employees.  But this does not mean that her disagreements were protected opposition activities under Title VII.  It is simply not enough that she disagreed, or that she used or uses the term "discrimination."  She must establish opposition to unlawful, discriminatory employment practices.

Second, her involvement in certain situations was so minimal that it is difficult to see how it can be construed as "opposition."  Her mere knowledge about another employee's situation is not "opposition."  Plaintiff's characterization of another employee's situation as involving discrimination or harassment, when the employee himself or herself did not see it as such, should also not be construed as "opposition." Communications with employees, of which the City was not aware prior to the July 12, 2013 request for termination, cannot be construed as "opposition."  The City submits that simply passing on an employee's complaints to different City personnel, when the subject employee had already made complaints, which the City was addressing or had addressed, is not necessarily "opposition" activity.  Where the City was already on notice and either taking action or had taken action, Bethel's actions in simply bringing

the already known complaints to the attention of someone else, within the City, should not be considered "opposition." That is, simply bringing matters to the City's attention – when the City was already on notice and taking action – should not be construed as "opposition."

Third, a number of the situations apparently relied upon by Bethel took place well before the termination of her employment and should not be considered. A number of the examples pointed to by Bethel took place prior to December 2011, when Stanley-Smith and Sullivan became Department Heads. Further, as the termination of Bethel's employment was based on her conduct following the April 26, 2016 reprimand, situations prior to that time frame would not be pertinent.

Fourth, a number of the situations apparently relied upon by Bethel took place after the July 12, 2013 suspending pending request for termination and after the August 27, 2013 termination of her employment. Such instances – "opposition" after her employment ended – obviously cannot be the basis for the termination of her employment.

Finally, a balancing test is applied to determine whether an employee has engaged in legitimate opposition activity. Laughlin, 149 F.3d 253 (4th Cir. 1998); Armstrong, 647 F.2d 441, 448 (4th Cir. 1981). The Court must "balance the purpose of the Act to protect persons engaging reasonably in activities opposing … discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Armstrong, 647 F.2d at 448, quoting, Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222 (1st Cir. 1976). "An employer must retain the power to discipline and discharge disobedient employees." Armstrong, 647 F.2d at 448.

Applying the balancing test to Bethel's alleged opposition activities, the Court must conclude that the employer's interests in maintaining security and confidentiality of personnel

matters and in having the Department of Human Resources be able to administer the City's

personnel operations and functions without unnecessary and inappropriate disruptions and

hindrance outweighs any interest that Bethel had in inserting herself into the specific personnel

matters of individual employees.  The City had policies and procedures in place to address

discrimination and harassment, and the Department of Human Resources regularly engaged with

employees regarding such matters.  Bethel's apparent desire to be intricately involved in the

process was not part of her job as an IT Planner, or her roles as an ERC representative or

employee representative with respect to specific grievances in the grievance step process.

Indeed, the City did not have issues with Bethel "assisting" employees with respect to

alleged discriminatory practices.  Rather, the City had issues with her conduct, such as Bethel's

efforts to bypass the City's Human Resources' policies and procedures; through the

miscommunication of information to employees; contacting employees, supervisors and

management regarding personnel matters, outside of the grievance step process, and in an effort

to sway positions or negotiate discipline; and continually involving herself in the specific

personnel issues of individual employees – that had absolutely nothing to do with any allegations

of discriminatory conduct.  She was an IT Planner, not a Human Resources employee, and

putting on a different "hat," whether as a "union president," ERC representative, or employee

representative in the grievance step process did not mean that she could become engaged in the

specific personnel issues of individual employees.

> **G.** **No causal connection exists between any "protected activity" and the termination.**

Finally, Bethel cannot demonstrate a causal nexus between her alleged protected

activities and her termination.  According to Plaintiff, she engaged in these activities for years,

and her employment was not terminated.  A.C. Paras. 20, 33, 42.  Rather, Plaintiff's employment

was terminated after the City learned that she had secretly recorded a managerial level employee, after telling him that the conversation was "off the record" and as she had continued to interfere in specific, individual personnel matters, even though she had been advised not to do so. Stanley-Smith Aff.; Sullivan Aff.

The complained-of events alleged to have involved opposition activities which occurred in a reasonable time frame prior to the July 12, 2013 request for termination and August 27, 2013 termination are (1) the May 22, 2013 meeting between two Council Members and other employees (A.C. Para. 64); (2) a meeting with her Department head to discuss a workplace bullying matter (not alleged to be discrimination) (A.C. Para. 63); (3) her provision of the recording to be used in and subsequent testimony at the Plans Examiner's grievance accessibility hearing in June 2013 (which did not involve allegations of discrimination) (A.C. Para. 66; Stanley-Smith Aff.); (4) and that she attempted to schedule a meeting with a Department Head for an employee whom she was "representing" in a "whistleblowing" situation (A.C. Para. 73; Pl. Dep. p. 109, l. 8-p. 110, l. 1.). Considering these events, the only event in which "discrimination" is even mentioned is the May 2013 meeting, where Bethel alleges that other employees brought discrimination complaints to the attention of two Council Members. However, there is no proof that those involved in the decision to terminate had any knowledge whatsoever regarding this meeting. There is no proof that this meeting caused the termination of her employment.

Even considering Bethel's alleged "opposition" activities outside of any pertinent timeframe, whether the decision maker (Jones) or those who advised him (Sullivan, Stanley-Smith) had knowledge of the specific activities is questionable. Plaintiff admitted that all three had no knowledge regarding her "assistance" in certain matters and that all three would not

necessarily have had knowledge in other instances.  Pl. Dep. p. 146, l. 16-p. 160, l. 15.  While

she indicated she thought others in the City would have had knowledge about her "assistance" in

certain instances, she can present no proof that the decision makers themselves had knowledge.

Further, she can present no proof of any causal connection between any alleged

"opposition" activity and the termination of her employment.

### H. The City terminated Plaintiff's employment for legitimate, nonretaliatory reasons.

Even were Plaintiff able to establish a prima facie case, the City easily meets its burden to

provide a legitimate nonretaliatory explanation for the adverse employment action taken. "If the

employer meets this burden, then the *presumption* created by the prima facie case is rebutted and

simply 'drops out of the picture.'" Mitchell v. Data General Corp., 12 F.3d 1317, 1310 (4th Cir.

1993) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511). The City has demonstrated as

stated in the undisputed facts and in the attached Affidavits, along with the Exhibits thereto, that

it discharged Plaintiff for ongoing, persistent, and significant misconduct.  Sullivan made it clear

that, as the Chief Information Officer, he could no longer trust Plaintiff to administer the City's

document management system which gave her essentially unfettered access to highly confidential

information, including personnel information. Sullivan Aff. The Investigative Hearing Report,

which details Plaintiff's misconduct and sets forth the disciplinary rules violated by Plaintiff

provides a thorough analysis of the reasons and basis for the City's decision. The supporting

materials to the Investigative Hearing Report, Stanley-Smith Aff., Ex. N document the ongoing

issues and resulting decision.   Regardless of Plaintiff's motives or desires to "assist" other City

employees, her dishonest and disruptive actions violated the City's policies and the City's

disciplinary rules, and, ultimately, led to the justified termination of her employment.

**I.** **Plaintiff has produced no evidence that the City's reasons for discharging her were a pretext for retaliatory intent.**

Once the City demonstrates its legitimate and nonretaliatory reasons for discharging Plaintiff, she must prove that this proffered rationale is mere pretext and that retaliation was the real reason for her termination. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)). Plaintiff can produce no evidence that the reasons and basis for the termination of her employment, as set forth in the Investigative Hearing Report, were in any way spurious or fabricated. Her mere disagreement with the reasons for her termination is not evidence.

To prove pretext, Plaintiff must show that the City's stated reasons were not the actual reasons for her termination. See Hawkins, 203 F.3d at 279 ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."). Plaintiff can offer no evidence whatsoever that the City did not act for the reasons stated in the Investigative Hearing Report. This Court has unequivocally stated that a plaintiff's own opinion that an employer's reasons for taking adverse action against her were pretextual, without supporting evidence, "is not enough to create a genuine issue of material fact sufficient to defeat summary judgment." McIntyre-Handy v. West Telemarketing Corp., 97 F. Supp.2d 718, 732 (E.D. Va. 2000).

More fundamentally, Plaintiff can proffer no evidence whatsoever of any retaliatory intent on the part of Sullivan, who requested the termination, or City Manager Jones, who approved the termination. And while it is clear that Ms. Bethel's activities were disruptive to the Department of Human Resources, there is no evidence that Human Resources Director Stanley-Smith recommended the approval of the termination based on any improper retaliatory animus in violation of Title VII.

**J.     The City is entitled to summary judgment because Bethel cannot establish that she would not have been fired "but for" her "protected activity."**

Plaintiff's admitted reaction upon listening to the secret recording of the senior manager a year-plus later is telling.  Plaintiff admitted that when she listened to the recording in June 2013, and heard that she had said the conversation was "off-the-record," she "cringed."  She knew this was unacceptable.  She knew this was a problem.  And indeed it was.  Pl. Dep. at p. 145, l. 24-p. 146, l.15.

Courts have repeatedly held that there was no retaliation where similar conduct involving inappropriate actions in the workplace was present.  Laughlin, 149 F.3d at 260 ("Title VII was 'not intended to immunize insubordinate, disruptive, or nonproductive behavior at work;" Thus, termination for breaching confidentiality is not retaliatory) (citations omitted); Robinson v. Our Lady of the Lake Reg'l Med. Ctr., 535 Fed. Appx. 348, 354-55 (5th Cir. 2013) (termination for acting in an "inappropriate" or "unprofessional" manner not retaliatory); Hampton v. Methodist Healthcare Sys. of San Antonio, 490 Fed. Appx. 640 (5th Cir. 2012) (no retaliation where there was improper work performance followed by insubordination), cert. den., 133 S. Ct. 1638 (2013); Bush v. Gambro Healthcare, Inc., 227 Fed. Appx. 483, 485 (6th Cir. 2007) (adverse employment action for calling another employee derogatory names was not retaliatory); Bishing v. Lehighton Ambulance Ass'n, 142 Fed. Appx. 71, 74 (3rd Cir. 2005) (termination for insubordinate behavior not retaliatory); Hellman v. Weisberg, 2007 WL 4218973 (D. Ariz. 2007) (no retaliation where employee disclosed confidential personnel information), aff'd., 360 Fed. Appx. 776 (9th Cir. 2009), cert. den., 561 U.S. 1027 (2010);

There is no evidence that Bethel would not have been terminated "but for" her oppositional conduct.  Likewise, there is no evidence that the clearly articulated reasons for the termination were pretextual.  Finally, there is no evidence that the reasons provided by the City

were false, and that the City was really seeking to retaliate against Bethel. The Investigative Hearing Report and the supporting materials are not controverted.

Sullivan has made it abundantly clear that Bethel's dishonesty in secretly recording the supposedly "off-the-record" conversation with the senior manager was such that he could no longer trust her to perform her duties as an IT Planner. Sullivan Aff. Her position gave her direct and unsupervised access to many highly confidential documents – including those involving personnel matters. With her demonstrated dishonesty, she had breached the trust inherent in placing someone is such a position, and, as a result, the termination of Bethel's employment was the appropriate action for the City to take. Further, the City's multi-step process leading to the termination demonstrated the seriousness with which the City took such action: the termination request was made by her Department Head, and approved by the Director of Human Resources, only after an investigative hearing was conducted. Stanley-Smith Aff., Exs. M, N. The termination decision was made by the City Manager only after review of the Investigative Hearing Report. Finally, the termination decision was upheld by a three-person grievance panel, after a multi-day grievance process, during which Plaintiff was represented by counsel. Stanley-Smith Aff.

## IV.    CONCLUSION

WHEREFORE, Defendant, City of Norfolk, for the reasons set forth in this Brief, prays that the Court grant its Motion for Summary Judgment, that the Amended Complaint be dismissed, with prejudice, and that Defendant recover its costs, and such other and proper relief as the Court deems just and equitable.

**CITY OF NORFOLK**

_____ /s/ _____
Heather A. Mullen, Deputy City Attorney (VSB 29239)
City of Norfolk Department of Law
810 Union Street, Room 900
Norfolk, VA 23510
Telephone: (757) 664-4529
Facsimile: (757) 664-4201
heather.mullen@norfolk.gov

_Counsel for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2016, a true copy of the foregoing is being filed with the Court's Electronic Filing System, which will send a Notice of Electronic Filing to the following user:

W. Barry Montgomery, Esq. (VSB # 43042)
KALBAUGH, PFUND & MESSERSMITH, PC
901 Moorefield Park Drive, Suite 200
Richmond, VA 23236
Tel: (804) 320-6300
Fax: (804) 320-6312
Email: barry.montgomery@kpmlaw.com

_Counsel for Plaintiff_

_____ /s/ _____
Heather A. Mullen, Deputy City Attorney (VSB 29239)
City of Norfolk Department of Law
810 Union Street, Room 900
Norfolk, VA 23510
Telephone: (757) 664-4529
Facsimile: (757) 664-4201
heather.mullen@norfolk.gov

_Counsel for Defendant_