VIRGINIA:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF VIRGINIA
Norfolk Division

JANE E. BETHEL

                                          Plaintiff,

v.                                        Civil Action No.: <u>2:15-cv-501</u>

**CITY OF NORFOLK**

                                          Defendant.

<u>**JANE E. BETHEL'S MEMORANDUM IN OPPOSITION TO CITY OF NORFOLK'S MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW, plaintiff Jane E. Bethel ("Bethel"), by counsel, and for her Memorandum in Opposition to the City of Norfolk's Motion for Summary Judgment (Document No. 54), states as follows:

### Introduction

Bethel's cause of action against her former employer is one for retaliation based on her conduct in opposing unlawful employment practices pursuant to Title VII of the Civil Rights Act. Bethel was an employee for the City of Norfolk for over 23 years at the time she was terminated in July 2013. In the 23 years, Bethel had received a promotion, pay increases, positive performance reviews and no disciplinary write ups prior to Norfolk's hiring a new director of Human Resources.

Bethel worked in Norfolk's Information Technology department. However, Bethel was elected as a representative of Norfolk's Employee Relations Committee ("ERC"), a body ostensibly created by Norfolk so that employees may voice their concerns over workplace

1

conditions (among other things) to management. Various co-workers also requested that Bethel serve as their "employee representative" during grievance proceedings pursuant to Norfolk's published grievance procedures. Acting in her capacity as an ERC representative and sometimes as an employee representative during grievances, Bethel made numerous complaints of sexual harassment as well as racial, gender and religious discrimination on behalf of co-workers without any complaints from Norfolk.

In January 2012, Capri-Stanley Smith ("Smith") became the new director of Human Resources. In April 2012, Bethel received her first disciplinary write up (in 22 years) for "involving yourself in personnel matters throughout the organization." While the write up was purportedly written by her supervisor David Sullivan, the write up stated that Bethel's activities "are a severe hindrance to the ability of the Department of Human Resources to effectively manage the City's workforce." Bethel continued to make complaints of discrimination and also began referring co-workers to the Equal Employment Opportunity Commission when the human resources department failed to address instances of sexual harassment and discrimination or harassment based on race, gender or religion.

Norfolk takes the position that the decision to fire Bethel was made by her supervisor David Sullivan (not the human resources department) on July 13, 2013. The purported reason for the termination was Mr. Sullivan's recent discovery in June of 2013 that Bethel had secretly recorded a conversation she had with another employee. However, according to a former manager of Norfolk's Human Resources Department whom will testify at trial and has supplied an Affidavit which is attached to this memorandum, the *human resources department* had been building a case to terminate Bethel *prior* to June 2013. Moreover, a former Norfolk City Council member advised Bethel *prior* to June 2013 that Norfolk had decided to terminate her. Also in

May 2013, Bethel arranged a meeting between several co-workers and members of City Council so that the co-workers could voice their complaints of racial and gender discrimination by a supervisor in the Fleet Maintenance department since human resources had not addressed their concerns. The council member reported the conduct of the supervisor in May or June of 2013 and he was terminated shortly thereafter. Shortly after the supervisor was terminated base on Bethel's efforts to bring his discriminatory conduct to light, Bethel was then terminated in July 2013.

Lastly and perhaps most compelling, during Bethel's grievance hearing wherein she challenged Norfolk's request for termination, Norfolk actually submitted as evidence an e-mail sent by Bethel advising an employee complaining of sexual harassment to report the matter to the EEOC. Norfolk submitted this e-mail from Bethel as evidence *in support* of its decision to terminate Bethel. **Norfolk even placed an arrow on the right margin of the e-mail pointing to the paragraph advising the employee to report the harassment to the EEOC.**

<u>**Material Facts to Which There is a Genuine Dispute**</u>

A. <u>**Bethel's Response to Specific Allegations Contained in Norfolk's Brief in Support of Motion for Summary Judgment (Document No.: 55)**</u>

Pursuant to Local Rule 56(B), Bethel contends that there are genuine issues of material that are disputed such that summary judgment is not appropriate in this action. Bethel disputes the following paragraphs listed in the City of Norfolk's (hereinafter "Norfolk") listing of "Undisputed Material Facts" in its Brief in Support of its Motion for Summary Judgment (Document No. 55):

- Bethel admits paragraph 1;
- Bethel admits the statement in paragraph 2 in that she was an Employee Relations Committed ("ERC") representative for her department but disputes Norfolk's description

of that role. ERC representatives such as Bethel were allowed to represent other employees and to collectively present issues to management regarding working conditions from employees across the city. (See Affidavit of Michael McKenna at ¶6.);

- Bethel admits those facts in paragraph 3;

- Bethel admits paragraph 4 in that she served as an employee representative for various Norfolk employees during the grievance process;

- Bethel denies the facts asserted in paragraph 5. As an elected member of the ERC, Bethel's Job duties specifically included time spent representing coworkers in addressing complaints to human resources and management regarding working conditions, including complaints of discrimination and harassment based on race, gender, national origin and sexual harassment (See Exhibit B, Affidavit of Jane Bethel, ¶7 and ¶2, Affidavit of Larry Burkhart, ¶7 and Affidavit of Mikael McKenna, ¶6-11);

- Bethel admits those allegations in paragraph 6;

- Bethel denies the allegations contained in paragraph 7. Bethel's job duties as an ERC representative and employee representative included assisting other employees in opposing Norfolk's discriminatory practices in the workplace included those based on race, gender, national origin or religion. ERC representative and employee representative were allowed to contact (See Exhibit A, Bethel's performance review, Exhibit B, definition of ERC representative from Norfolk's Interrogatory answers and Affidavit of Michael McKenna, ¶6-11);

- Bethel admits that she advocated for co-workers as early as 2010 for instances of Title VII discrimination. Bethel denies and disputes the remainder of paragraph 9;

- Bethel denies that she engaged in "misconduct" as alleged in paragraph 10;

4

- Bethel admits the allegations of paragraph 11;
- Bethel denies the allegations in paragraph 12;
- Bethel denies the allegations in paragraph 13. Bethel contacted the Director of Utilities in July 2103 to discuss an employee named Williams Meekins and his complaints of religious discrimination in the workplace by his supervisor. (See Affidavit of William Meekins, ¶7 and ¶10-13);
- Bethel denies the allegations in paragraph 14. Bethel contacted the Director of Utilities in July 2103 to discuss an employee named Williams Meekins, to grieve his suspension pending termination and his complaints of religious discrimination by his supervisor. (See Affidavit of Williams Meekins ¶7-13 and Exhibit E);
- Bethel admits that she had been so advised as alleged in paragraph 15 but denies the accuracy of the advice (See Affidavit of Michael McKenna, ¶1-12 and Exhibits B and H);
- Bethel admits that she had been so advised as alleged in paragraph 16 but denies the accuracy of the advice (See Affidavit of Michael McKenna, ¶1-12 and Exhibits B and H);
- Bethel admits that she had been advised as alleged in paragraph 17 but denies that the advice was a correct statement of how Norfolk actually interacted with ERC representatives. (See Affidavit Michael McKenna, ¶1-12, Affidavit of Hap Cluff and Exhibit B);
- Bethel denies the allegation in paragraph 18 but denies the accuracy of the advice (See Affidavit of Michael McKenna, ¶1-12);
- Bethel admits paragraph 19 but denies that the suspension was "pursuant to disciplinary rules" as Norfolk failed follow its own policy requiring progressive discipline prior to termination;

- Bethel admits the allegations contained in paragraph 20 but denies that she was actually terminated for the reasons stated in the Affidavit (see response to paragraph 21 below);
- Bethel denies the allegations contained in paragraph 21. The decision to terminate Bethel was not made by David Sullivan on July 12, 2013. According to a retired employee of Norfolk who worked as a human resources manager at the time that the decision to fire Bethel was made, the decision to terminate Bethel was made by individuals within the human resources department who "built a case against her." Prior to July 2013, it was a "foregone conclusion" that that Norfolk wanted to fire Bethel and had "built a case" against Bethel. (See Affidavit of Larry Burkhart, ¶1-18). Norfolk employees that worked in Human Resources, including Capri Stanley-Smith, gathered information against Bethel to build a case for termination and would "get excited" when Bethel would send an e-mail that they believed could be used against her. (See Affidavit of Larry Burkhart, ¶17-18). Moreover, On May 22, 2013, Bethel arranged a meeting with Tommy Smigiel ("Smigiel"), a member of the Norfolk City Council and Andy Protogyrou ("Protogyrou"), another member of the Norfolk City Council. The purpose of the meeting was for about a dozen employees and former employees of Norfolk to advise Smigiel and Protogyrou of discriminatory practices by Norfolk based upon gender and race (See Affidavit of Jane Bethel, ¶9). A short time after the May 22, 2013 meeting, Smigiel spoke with Niki Riddick, the Assistant Director of General Services, regarding the complaints of discrimination made by five Fleet Management employees/former employees (Affidavit of Jane Bethel, ¶10). The Fleet Manager was terminated less than two weeks after the May 22, 2013 meeting, and Bethel was terminated in July 2013. (See Affidavit of Jane Bethel, ¶10);

Prior to June 2013, Smigiel advised Bethel that Norfolk's legal department had decided to terminate Bethel. (Affidavit of Jane Bethel, ¶11);

- Bethel admits the allegations in paragraph 22;

- Bethel denies the allegations contained in paragraph 23 and 24. The decision to terminate Bethel was made by individuals within the human resources department by individuals who "built a case against her" prior to the investigative hearing report and prior to June 2013. (See Affidavit of Larry Burkhart, ¶17-18 and Affidavit of Jane Bethel, ¶9-12);

- Bethel denies the allegations contained in paragraph 25. Norfolk terminated Bethel in retaliation for her efforts to oppose Norfolk's practice of discrimination based on race, gender and sexual harassment. As part of its evidence in support of its decision to terminate Bethel, Norfolk submitted an e-mail from Bethel to employee Lisa Cauldwell whom complained of sexual harassment and discrimination. (See Exhibit C—email from Jane Bethel to Lisa Cauldwell and Exhibit D—deposition testimony of Jane Bethel, P. 212, ln. 25 through P. 214, ln. 19). The e-mail *submitted by Norfolk* as evidence in support of terminating Bethel states that "I will be happy to assist you (Cauldwell) in any way I can. I am sorry to hear of the harassment and discrimination....If you are not getting satisfactory results from the EEOC you may want to write to Senator Warner's Office." The e-mail has a large arrow pointing to the paragraph referenced in the EEOC. The arrow was not placed on the e-mail by Bethel but by the City. (See Exhibits C and D).

- Bethel denies the allegations in paragraph 26. (See Affidavit of Larry Burkhart, Affidavit of Jane Bethel and Exhibits A, B, C, D, E, F and G);

- Bethel denies paragraph 27. Sullivan did monitor Bethel's work activities and Sullivan never complained to Bethel that she was not performing her job, being insubordinate, interfering with personnel matters nor being dishonest. ( See Affidavit of Jane Bethel, ¶5-6);
- Bethel denies paragraph 28 in that her efforts as an ERC representative to assist coworkers in their complaints regarding workplace conditions, including discrimination, was part of her job and included within the role of an ERC. (See Affidavit of Jane Bethel and Affidavit of Michael McKenna);
- Bethel denies the allegation of paragraph 29;
- Bethel admits paragraph 30;
- Bethel admits paragraphs 31;
- Bethel admits paragraph 32;
- Bethel denies paragraph 33 in at she did, acting within her role as an ERC representative, assist numerous employees of Norfolk to oppose title VII discrimination and harassment by Norfolk. (See Affidavit of Jane Bethel, Affidavit of Larry Burkhart; Affidavit of William Meekins , Affidavit of Mary Frye and Exhibit E—Norfolk's Supplemental Answer to Interrogatory 11);
- Bethel admits paragraph 34;
- Bethel admits paragraph 35;
- Bethel denies paragraph 36. Norfolk was well aware of Bethel assisting multiple employees opposed such discrimination and harassment and acted to build a case to terminate her employment long before June 2013. (See Affidavit of Jane Bethel,

- Affidavit of Larry Burkhart; Affidavit of William Meekins , see attached Exhibit E—Norfolk's Supplemental Answer to Interrogatory 11 and Affidavit of Mary Frye);
- Bethel denies paragraph 37. Norfolk terminated Bethel in retaliation for her efforts to opposed discrimination and harassment by Norfolk against its employees. (See Affidavit of Jane Bethel, Affidavit of Larry Burkhart; Affidavit of William Meekins and Exhibits B, C, D, E, F and G);
- Bethel admits paragraph 38;
- Bethel admits paragraph 39;
- Bethel admits paragraph 40;
- Bethel admits paragraph 41;

**B.      Additional Material Facts To Which There is a Genuine Dispute**

1. Bethel Engaged in Protected "Oppositional" Activity Under Title VII

Norfolk has acknowledged that from January 2, 2012 through August 28. 2013 (date of Bethel's termination, Bethel assisted several employees in making complaints of discrimination and harassment to the city and that Norfolk was aware of Bethel's assistance. (See attached Exhibit E—Norfolk's Supplemental Answer to Interrogatory 11, Affidavit of Jane Bethel and Affidavit of Larry Burkhart). For example, Luis Serrano made allegations of racial and gender discrimination in 2011 and 2013 (See Exhibit E). Mary Frye, with the assistance of Bethel acting as Frye's employee representative, raised complaints of racial discrimination to Norfolk and also filed a complaint with the EEOC against Norfolk and later a federal lawsuit. (See Exhibit E, and Affidavit of Mary Frye, ¶3-6). Bethel was not rude, disrespectful or disruptive when representing Frye. (Id. at ¶6)

In 2012, Alton Turner, represented by Bethel, grieved the termination of his employment and raised allegation of religious discrimination. (See Exhibit E). In 2013, Robert Lemon and Larry Williams filed grievances with allegations of race discrimination while assisted by Bethel. (See Exhibit F). In 2012, Shaneya Jackson made internal complaints of racial and gender discrimination. (See Exhibit E and Exhibit F- Deposition of Jane Bethel at page 37, ln, 10 through page 38, ln 22). In 2013, William Meekins raised allegations of religious discrimination and was represented by Bethel (See Exhibit E and Affidavit of William Meekins). In 2012 and 2013, Bethel made internal complaints to Norfolk on behalf of employees Erin Wilson, Jennie Higgins and Sandra MacPherson based on gender discrimination and sexual harassment. (See Exhibit E).

Since Norfolk's human resources department did not address the complaints of racial discrimination by Robert Lemon, Larry Williams, Shaneya Jackson and others, on May 22, 2013 (just 2 months prior to her suspension pending termination), Bethel set up a meeting with Norfolk City Council members Tommy Smigiel and Andy Protogyrou. (See Exhibit F p. 38, ln. 22, p. 41, ln. 1 and Affidavit of Jane Bethel, ¶9). Bethel orchestrated and attended the May 22, 2013 meeting where the employees voiced their complaints to the City Council members of racial discrimination by their white supervisor, Ken Bernard, and further complained that Norfolk's human resources department had ignored their complaints. (See Exhibit F, p. 38, ln 22- p. 40, ln. 25; See also Affidavit of Jane Bethel, ¶9).

The role of an ERC representative such as Bethel include acting as a liaison on matter of concern to coworkers and meeting with the City Manager or her designee to discuss such matters as working conditions. (See Exhibit B-"Role of an ERC Representative"). During grievance procedures, every employee of Norfolk is entitled to be represented at each step of the procedure

by any person he desires. (See Exhibit H—Norfolk Grievance Procedures Policy Number 8.4(K)).

### 2. Norfolk Took Adverse Employment Action Against Bethel

In its brief, Norfolk accepts that it took an "adverse employment action" against Bethel when it terminated her. (See Document No.: 55, page 10, first full paragraph).

### 3. A Causal Connection Existed Between Bethel's Protected Activity (Opposition Conduct) and The Termination of Her Employment

Norfolk claims in its Brief in Support of its Motion for Summary Judgment that it decided to terminate Bethel on July 13, 2013 after learning of a secret recording she had made. However, according to a former Norfolk employee that worked in human resources, it was a already "foregone conclusion" that Norfolk had already decided to terminate Bethel and human resources had worked to "build a case against her." (See Affidavit of Larry Burkhart, ¶17-19). Moreover, prior to July 2013, Norfolk City Council member Robert Smigiel told Bethel that Norfolk was "making recommendations to terminate" her. (See Affidavit of Jane Bethel, ¶10). On May 22, 2013, Bethel arranged a meeting with Tommy Smigiel ("Smigiel"), a member of the Norfolk City Council and Andy Protogyrou ("Protogyrou"), another member of the Norfolk City Council. The purpose of the meeting was for about a dozen employees and former employees of Norfolk to advise Smigiel and Protogyrou of discriminatory practices by Norfolk based upon gender and race (Affidavit of Bethel, ¶9). A short time after the May 22, 2013 meeting, Smigiel spoke with Niki Riddick, the Assistant Director of General Services, regarding the complaints of discrimination made by five Fleet Management employees/former employees. The Fleet Manager was terminated less than two weeks after the May 22, 2013 meeting, and Bethel was terminated in July 2013. (See Affidavit of Jane Bethel, ¶10);

Moreover, as part of its evidence in support of its decision to terminate Bethel, Norfolk submitted an e-mail from Bethel to employee Lisa Cauldwell whom complained of sexual harassment and discrimination. (See Exhibit C—email from Jane Bethel to Lisa Cauldwell and Exhibit D—deposition testimony of Jane Bethel, P. 212, ln. 25 through P. 214, ln. 19). The e-mail *submitted by Norfolk* as evidence in support of its decision to terminate Bethel states that "I will be happy to assist you (Cauldwell) in any way I can. I am sorry to hear of the harassment and discrimination….If you are not getting satisfactory results from the EEOC you may want to write to Senator Warner's Office." The e-mail has a large arrow pointing to the paragraph referenced in the EEOC. The arrow was not placed on the e-mail by Bethel but by the City. (See Exhibit C and Exhibit D, p. 214, ln. 9-19).

Norfolk was well aware of Bethel assisting multiple employees opposed such discrimination and harassment and acted to build a case to terminate her employment long before June 2013. (See Affidavit of Jane Bethel, Affidavit of Larry Burkhart; Affidavit of William Meekins, Affidavit of Mary Frye, Exhibit E—Norfolk's Supplemental Answer to Interrogatory 11 and Exhibit F (Bethel's deposition testimony ).

Moreover, Bethel had enlisted the assistance of John Sanderlin, the City Auditor to make her complaints opposing discrimination. (See Exhibit G, Deposition Transcript of John Sanderlin, Jr., P. 3, ln. 12-16.) Specifically, Bethel sent an e-mail to Sanderlin on March 22, 2013 advising him of two African American men, both service attendants, that she was assisting with claims of discrimination and that she referred them to the EEOC. (See Exhibit G, p. 13, ln. 16 through p.14, ln. 23 and attached e-mail). The same e-mail to Sanderlin from Bethel indicated that other young ladies claimed discrimination and asked if Sanderlin's office would look into the complaints since human resources decided the complaints were "unfounded." (See

Exhibit G, p. 15, ln. 22 through P. 16, ln. 11 and attached e-mail). This e-mail was dated less than four months prior to date Norfolk purportedly decided to fire Bethel.

Contrary to Norfolk's stated reasons for terminating Bethel, she was not "disruptive" in human resource matters nor did she prevent them from going their jobs (See Affidavit of Mary Frye, ¶6 and Affidavits of Larry Burkhart, Affidavit of Hap Cluff). Prior to her termination, Bethel had never received any negative job performance reviews. (See Affidavit of Jane Bethel). According to her former supervisor, Bethel was meticulous about tracking and reporting her time and was conscientious in her professional responsibility to Norfolk. (See Affidavit of Hap Cluff, ¶9). The only disciplinary action Bethel had ever received from Norfolk was in April 2012 wherein Norfolk advised her that "Although you are an information technology planner, you have and continue to involve yourself in personnel matters throughout the organization." (See Affidavit of David Sullivan, Exhibit A—attached to Norfolk's Brief). Norfolk went on to accuse Bethel of "abusing" her role as a member of the Employee Relations Committee. (Id.).

However, Michael McKenna, a retired Norfolk police officer and former ERC representative like Bethel, has stated under oath that ERC representatives were in fact empowered to speak to management, department heads and managers on behalf of employees they represented. (See Affidavit of Michael McKenna, ¶6-11). Officer McKenna engaged in conduct identical to that of Bethel in that he would often meet with management prior to a grievance going forward in order to try to resolve the issue and he was never advised that he was "interfering in personnel matters." (See Affidavit of Michael McKenna, ¶12).

## ARGUMENT

1. **Standard on Summary Judgment**

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)* The district court's function, however, "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986)  The Fourth Circuit reviews *de novo* an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Also, summary judgment is "seldom appropriate" in cases in which particular states of mind are decisive elements of [a] claim. See Dalton v. Capital Associated Indus., 257 F.3d 409 (4th Cir. 2001), citing Magill v. Gulf and W. Indus. ,Inc., 736 F.2d 976, 979 (4th Cir. 1984).

## 2. Bethel Has Offered Overwhelming Evidence That She Opposed Norfolk's Discriminatory Employment Practices That Were Prohibited by Title VII

In her elected role as an Employee Relations Committee ("ERC") representative and as an employee representative, Bethel clearly engaged in efforts to oppose discriminatory practices by Norfolk. The Fourth Circuit has held that courts must take an "expansive view" of what constitutes oppositional conduct, recognizing that it "encompasses utilizing *informal grievance procedures* as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.' DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015), citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) and Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009) (protected activity includes "complain[ing] about unlawful practices to a manager, the union, or other employees") (*emphasis* added).

The Fourth Circuit in DeMasters also noted that "while the oppositional activity must be directed to "an unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-3(a), this Circuit's recent en banc opinion in Boyer-Liberto made clear that we should also interpret "unlawful employment practice" broadly." 796 F.3d at 417. Thus, "an employee is protected when she opposes 'not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful,'" and the Title VII violation to which the oppositional communication is directed "may be complete, or it may be in progress." Id. The Court in DeMasters further held that "We conclude from this review of the statute and case law that we must examine the course of a plaintiff's conduct through a *panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole.*" Id. at 418 (*emphasis* added).

Bethel made numerous complaints to Norfolk about was she believed to be unlawful conduct directed towards other employees---including sexual harassment, racial discrimination, gender discrimination and religious discrimination. Bethel engaged in such opposition activity as a duly elected member of the Employee Relations Committee ("ERC"), a body ostensibly created by Norfolk as a means for employees to address workplace conditions. Bethel also complained of discrimination during grievance procedures wherein she represented other coworkers. Bethel engaged in her opposition conduct pursuant to Norfolk's published anti-discrimination/harassment and anti-retaliation policies.

Considering the numerous complaints made by Bethel to various Norfolk officials, it is clear that Bethel "communicated to her employer a belief that the employer had engaged in . . . a form of employment discrimination." See DeMasters at 420. It is equally evident that Bethel directed her communications to practices that were either "actually unlawful" or that that she

15

"reasonably believe[d] to be unlawful." Id. The conduct complained of by Bethel to Norfolk clearly used the terms "discrimination" or "harassment" based upon the various employees' race, gender or religion. On several occasions, Bethel made mention of referring employees to the EEOC for their complaints of such discrimination or harassment.

When taking the "expansive view" and considering the "whole picture" of Bethel's conduct as required by DeMasters, Bethel engaged in protected "opposition conduct" wherein she communicated to her employer her belief that they had engaged in a various form of unlawful employment discrimination under Title VII.

### 3. There is Substantial Evidence That Norfolk Terminated Bethel in Retaliation for Her Engaging in Protected Activity

The Fourth Circuit has recently determined that the Supreme Court in University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517 (2013) did not alter the McDonnel-Douglas method of proof for Title VII retaliation cases. See Foster v. Univ of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015). Under the familiar McDonnell Douglas framework Bethel must first establish a prima facie case by showing: (i) "that [she] engaged in protected activity," (ii) "that [her employer] took adverse action against [her]," and (iii) "that a causal relationship existed between the protected activity and the adverse employment activity." Id.

Bethel has offered evidence that she engaged in protective activity when she assisted numerous employees in making claims of Title VII discrimination and in referring employees to the EEOC when Norfolk failed to address their complaints. Norfolk clearly took adverse action when it terminated Bethel.

Bethel has also offered evidence that during her official grievance of Norfolk's decision to terminate her, Norfolk submitted an e-mail as evidence in support of its decision to terminate.

In that e-mail, Bethel gave advice to a coworker on her complaint of sexual harassment and even referred the co-worker to the EEOC. Norfolk placed an arrow next to the paragraph of that e-mail referring the coworker to the EEOC so as to emphasis the importance (in Norfolk's mind) of Bethel's referral of the employee to the EEOC to further her complaint. This e-mail, especially considering the context in which it was used, is strong evidence that Norfolk terminated Bethel in retaliation for her activity in opposing discriminatory practices. Moreover, Norfolk previously issued a written reprimand to Bethel advising her that she was not to "interfere" in personnel matters by making such complaints about discrimination.

Moreover, Bethel was never disciplined for performance based issues nor did she receive any negative performance reviews. In 23 years, the only discipline Bethel ever received was due to her efforts in opposing discrimination in her roles as an ERC representative and employee representative during grievance procedures. Finally, when Bethel coordinated a meeting between several employees claiming racial discrimination and councilman Smigiel in May 2013, Norfolk terminated Bethel shortly thereafter. Those employees claiming racial discrimination at the May 2013 meeting advised that they turned to Bethel because they had not received help from human resources when they made their complaints. Councilman Smigiel then reported the employee's complaints which quickly led to the termination of the offending supervisor. The termination of the offending supervisor is proof that the employees' claims of discrimination were true and that Bethel was instrumental in having the offending supervisor terminated. Norfolk then terminated Bethel shortly after terminating the offending supervisor.

Based on the foregoing, there is a genuine dispute of fact as to whether Bethel's oppositional conduct was the cause of Norfolk's adverse employment action against Bethel.

### 4. There is Substantial Evidence That Norfolk's Purported Reasons for Terminating Bethel Were Pretext For It's Retaliatory Intent

Since Bethel has produced evidence of a causal connection between her protected activity and her termination, the burden then shifts Norfolk to show that the retaliatory action was in fact the result of legitimate non-retaliatory reasons. Foster at 250. Norfolk has claimed that it fired Bethel not for her conduct opposing discrimination and harassment, but due to her recording a coworker without his knowledge and general insubordination and "interference" in personnel matters.

The burden shifts back to Bethel to rebut the Norfolk evidence by demonstrating that the employer's purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." Foster at 250 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) and see also Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010).

Importantly, if a plaintiff can show that she was fired under suspicious circumstances and that her employer lied about its reasons for firing her, the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination. Id. Bethel has offered evidence that Norfolk's purported reasons for termination are false and therefore a pretext. Norfolk claims that it made the decision to terminate on July 13, 2013 which included the recent revelation of Bethel recording a conversation she had with a city worker. However, based on the Affidavit of Larry Burkhart, the former Human Resources Manager for Norfolk and the statements of Norfolk City Councilman Smigiel, Norfolk had already decided to fire Bethel due to her oppositional efforts well before June 2013. Norfolk's statement that it decided to terminate

Bethel on July 13, 2013 shortly after learning of the secret recording is a pretext for its retaliatory intent.

If the jury believes Mr. Burkhart and Councilman Smigiel, they can clearly infer that the "real reason" for Bethel's termination was Norfolk's retaliation for her oppositional conduct thus establishing "but-for" causation. See Nassar at 2525 and Holland v. Wash Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Moreover, Norfolk's generalized statements that it fired Bethel for insubordination and "interference in personnel matters" is directly contradicted by the Affidavit of Michael McKenna, Hap Cluff and the defined role of the ERC representative pursuant to Norfolk's policies. Once again, the sworn statements of Norfolk's former employees (Hap Cluff, Michael McKenna and Larry Burkhart) directly contradict Norfolk's stated position that it fired Bethel due to her conduct that was not appropriate for an ERC representative. If the jury believes the testimony of Mr. McKenna, Mr. Cluff and Mr. Burkhardt, then it may infer that Norfolk has lied about its true reasons for firing Bethel and that Norfolk's true intent was to retaliate for Bethel's oppositional conduct.

## CONCLUSION

There is substantial evidence that Bethel engaged in both oppositional and participatory conduct opposing discriminatory employment practices by Norfolk. Bethel clearly suffered an adverse employment action when she was terminated. Norfolk's desire to retaliate against Bethel for her conduct in opposing Norfolk's discriminatory practices was the "but-for" cause of Norfolk's decision to terminate Bethel and the purported legitimate reasons for her termination were clearly pre-text.

Based on the foregoing, there are genuinely disputed material facts and issues for trial and Bethel moves this Honorable Court to deny the City of Norfolk's Motion for Summary Judgment.

**JANE E. BETHEL**

/S/  W. Barry Montgomery
W. Barry Montgomery, Esq.  (VSB# 43042)
*Counsel for Jane E. Bethel*
KALBAUGH, PFUND & MESSERSMITH, PC
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
Tel:  (804) 320-6300
Fax:  (804) 320-6312
E-mail: barry.montgomery@kpmlaw.com

**Certificate of Service**

I hereby certify that on December 29, 2016, I did file the foregoing documents with the Clerk of this Court using Electronic Case Filing ("ECF") which then sent a Notice of Electronic Filing ("NEF") to the following persons:

Heather A. Mullen, Esq.  (VSB 29239)
City of Norfolk Department of Law
810 Union Street, Room 900
Norfolk, VA 23510
Tel:  (757) 664-4529
Fax:  (757) 664-4201
Heather.mullen@norfolk.gov
Counsel for Defendant

/S/  W. Barry Montgomery
W. Barry Montgomery, Esq.  (VSB# 43042)
*Counsel for Jane E. Bethel*
KALBAUGH, PFUND & MESSERSMITH, PC
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
Tel:  (804) 320-6300
Fax:  (804) 320-6312
E-mail: barry.montgomery@kpmlaw.com